**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HOWARD SEIGLE, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| P.N. FINANCIAL INC., an Illinois corporation; | ) | |
| and NELSON MACWAN, individually and as | ) | |
| President of P.N. FINANCIAL INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

**COMPLAINT**

1.      Plaintiff Howard Seigle brings this action to secure redress from the unlawful debt

collection practices of Defendants P.N. Financial Inc. and Nelson Macwan, in violation of the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3.      Venue and personal jurisdiction are proper because: (1) Defendant P.N. Financial

Inc. maintains its principal place of business and headquarters in this District; (2) Defendant

Macwan resides and does business in this District; and (3) a substantial part of the events giving

rise to Plaintiff's claims occurred here.

**PARTIES**

4.      Plaintiff Howard Seigle is a natural person and resident of Kansas City, Missouri.

5.      Defendant P.N. Financial Inc. d/b/a P.N. Financial & Associates ("P.N.

Financial") is an Illinois corporation with its principal place of business at 7330 North Cicero

Avenue, Suite 219, Lincolnwood, Illinois 60712.

6.     Defendant Nelson Macwan is a natural person and resident of Skokie, Illinois. Mr. Macwan is the President of P.N. Financial.  At all times relevant hereto, Mr. Macwan formulated, directed, controlled, had authority to control, and participated in the acts and practices of P.N. Financial, including the acts and practices set forth in this Complaint.

## FACTS

7.     Plaintiff Seigle maintained an Orchard Bank credit card account for personal and household use from approximately 2002 through 2007.

8.     At all times relevant hereto, the Orchard Bank Credit Card brand was owned or provided by HSBC or an HSBC predecessor company, whether by acquisition, merger, renaming, or otherwise, including but not limited to Household Bank ("HHB") (collectively, "HSBC").  On information and belief, Orchard Bank merged into HHB on or around February 2000, and HHB was subsequently renamed HSBC in or around March 2005.

9.     Plaintiff ultimately fell behind on making payments in connection with his Orchard Bank Credit Card account, and in the summer of 2009, he was contacted by Hoffman, Weinberg & O'Brien, LLC, a collection agency attempting to collect the resulting debt on behalf of HSBC.

10.     As agreed, Plaintiff provided a $973.03 payment to Hoffman, Weinberg & O'Brien, LLC on July 31, 2009, to satisfy the debt owed to HSBC in relation to his Orchard Bank Credit Card account.  (See Seigle Check, attached hereto as Ex. 1.)  This payment was memorialized via a letter to Plaintiff that specifically notes HSBC as the creditor and acknowledges that the debt was satisfied on July 31, 2009, through the payment by Plaintiff of $973.03 as settlement of a $1,216.29 debt in relation to the particular account.  (See Satisfaction

2

Letter, attached hereto as Ex. 2, noting that "this document is proof that the … matter has been settled in full in the amount of $**973.03** and the debt has been satisfied.")

11.     Despite the 2009 payment, Plaintiff began receiving letters from Defendants in or around early 2011, which demanded payment of the debt previously owed in connection with his Orchard Bank Credit Card account.

12.     After being informed by Plaintiff in or around the summer of 2011 that he disputed the debt, that it had already been paid, and that he would not be providing any money to Defendants, Defendants failed to verify the current status of the debt and, instead, continued to attempt to collect from Plaintiff through further telephone calls and letters.

13.     In fact, during a phone call with Plaintiff in or around November 2011, Defendants' representative told Plaintiff that he did not care if the debt had already been paid and that he would be contacting Plaintiff's employer.  However, no call was ever made by Defendants to Plaintiff's employer, and Defendants and their representative, on information and belief, did not actually know the identity of Plaintiff's employer at the time such statement was made.

14.     On a number of telephone calls to Plaintiff, Defendants failed to identify themselves as P.N. Financial and that the basis for the call was the attempted collection of a debt. For example, one message left on Plaintiff's cell phone on December 27, 2011, simply states: "Howard, this is Marcus [or Mark] Fitzpatrick.  Give me a call back at (877) 588-7730."

15.     Defendants have sent Plaintiff Seigle approximately six collection letters to date, all of which follow the same or virtually the same format, including the assertion that the particular letter constitutes "final notice" and the "final opportunity to resolve this matter without

3

the additional expense of penalties/or interest." (See Example Collection Letters, attached hereto as Ex. 3.)

16.     Despite the assertion in each of Defendants' letters that "there is still time to avoid any interest and/or penalties if you resolve this matter [by a set date,]" and that they "will have exhausted all methods of resolution" absent Plaintiff's acceptance of their terms and conditions by such date, Defendants continue to send Plaintiff collection letters offering to settle a debt of $1,986.01 for $993.01 in connection with Plaintiff's prior Orchard Bank Credit Card account. (See, e.g., Ex. 3.)

17.     Plaintiff does not owe any amount to any party in connection with his prior Orchard Bank Credit Card account, and any debt that Plaintiff might have owed was satisfied by his payment of $973.03 in July 2009.

18.     Plaintiff is aware that Defendants are currently facing a major investigation and lawsuit by the Illinois Attorney General's Office for improper debt collection practices analogous to those alleged herein, among others. *See People v. P.N. Financial Inc.*, No. 12 CH 00929 (Cir. Ct. Cook Cty., Ill. filed Jan. 11, 2012).

## COUNT I
## Violations of the FDCPA, 15 U.S.C. §§ 1692 *et seq.*

19.     Plaintiff realleges and incorporates herein Paragraphs 1-18, above.

20.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3), as he is a natural person allegedly obligated to pay a debt.

21.     Defendants each constitute a "debt collector" as defined by 15 U.S.C. § 1692a(6), in that they use interstate mailings and other instrumentalities of interstate commerce in their business, the principal purpose of which is the collection of debts. On information and belief, Defendants also regularly collect and attempt to collect debts owed or due or asserted to be owed

or due others, and Defendant P.N. Financial is a licensed collection agency with the Illinois

Department of Financial and Professional Regulation (No. 017021155).

22.     Starting in approximately early 2011, Defendants repeatedly sent letters to

Plaintiff, stating that he owed approximately $2,000 in connection with his prior Orchard Bank

credit card account, and offering to settle for approximately $1,000.  (See, e.g., Ex. 3.)

23.     Plaintiff already paid off the debt for which P.N. Financial seeks payment.  In as

far back as 2009, Plaintiff paid $973.03 to HSBC through Hoffman, Weinberg & O'Brien, LLC

to settle his account.  (See Exs. 1-2.)

24.     Defendants failed to verify that an amount was actually owed and persisted in

attempting to collect the false debt after being informed that it had already been paid.

25.     Defendants' representative even threatened to contact Plaintiff's employer after

Plaintiff refused to pay any amount to Defendants.

26.     The FDCPA prohibits a debt collector from using "any false, deceptive, or

misleading representation or means in connection with the collection of any debt[,]" including

but not limited to "[t]he false representation of … the character, amount, or legal status of any

debt."  15 U.S.C. § 1692e(2)(A).

27.     By falsely informing Plaintiff through collection letters and phone calls that he

owed an amount in connection with his prior credit card account when any debt had already been

paid and no amount was actually due or owing, Defendant used false, deceptive, and misleading

representations and means in connection with the attempted collection of a debt through falsely

representing the alleged debts character, amount, and legal status, in violation of Section

1692e(2)(A) of the FDCPA.

28.     The FDPCA also prohibits a debt collector from threatening to take any action

that cannot legally be taken or that is not intended to be taken, as well as from using any false

representation or deceptive means to attempt to collect any debt.  15 U.S.C. § 1692e(5) and (10).

29.     Defendants' letters to Plaintiff each state that the particular letter constitutes "final

notice" and Plaintiff's "final opportunity to resolve this matter without the additional expenses of

penalties/or interest."  (See, e.g., Ex. 3.)  Among other things, each of Defendants' letters

informs Plaintiff that "there is still time to avoid any interest and/or penalties if you resolve this

matter [by a set date]" and that, absent Plaintiff's acceptance of their terms and conditions by

such date, they will have "exhausted all methods of resolution."  (See, e.g., Ex. 3.)

30.     Such "final notice" language in Defendants' letters violates Section 1692e(5) of

the FDCPA by improperly threatening to take action that cannot legally be taken or which is not

intended to be taken, especially where:  (1) Plaintiff cannot be subjected to any interest or

penalties because he does not owe the asserted debt; and (2) it is evident that Defendants did not

actually intend to take such further actions where—despite the misleading representation that

each letter was "final"—additional "final notice" collection letters continue to be sent to Plaintiff

for the same amount.

31.     In truth, Defendants use such "final notice" language as a means of attempting to

unfairly pressure Plaintiff into paying the amount demanded by deceiving him into believing that

he will be subjected to "interest and/or penalties" if he fails to pay by the date stated, in violation

of the FDCPA's prohibition against using false representations or deceptive means to attempt to

collect a debt.  See 15 U.S.C. § 1692e(10).

32.     Further, Section 1692c(b) of the FDCPA provides that, absent the consumer's

express consent, judicial permission, or as reasonably necessary to effect a postjudment judicial

6

remedy, "… a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector[,]" except as provided in Section 1692b.  Section 1692b of the FDCPA only authorizes a debt collector to contact a third party in connection with a consumer's debt for the limited purpose of acquiring location information about the consumer.

33.     Therefore, the threat by Defendants' representative that he would be contacting Plaintiff's employer after Plaintiff refused to provide payment constituted a false, misleading, and deceptive representation in connection with the attempted collection of a debt, in violation of Section 1692e(5) and (10) of the FDCPA, where:  (1) Defendants had already acquired Plaintiff's contact information and thus had no legal basis for communicating with Plaintiff's employer pursuant to Section 1692b; (2) Defendants were not otherwise permitted to contact Plaintiff's employer in connection with the attempted collection of any asserted debt pursuant to Section 1692c(b); and (3) as no call was ultimately made and Defendants are not believed to even know the identity of Plaintiff's employer, it is apparent that Defendants had no intention of actually making the call to Plaintiff's employer in the first place.  In fact, the empty threat that Defendants would be contacting Plaintiff's employer constituted another deceptive attempt at pressuring Plaintiff into paying the amount wrongfully demanded by Defendants.

34.     Except in the case of a formal, legal pleading, debt collectors are required to disclose in communications with a consumer that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

35.     Defendants have repeatedly violated the disclosure requirement of Section 1692e(11) by leaving voicemail messages on Plaintiff's phone that fail to identify the caller as a

debt collector, including the recent December 27, 2011 message from Defendants stating:

"Howard, this is Marcus [or Mark] Fitzpatrick. Give me a call back at (877) 588-7730."

36.     The FDCPA also prohibits a debt collector from using "unfair or unconscionable

means to collect or attempt to collect any debt[,]" including but not limited to "[t]he collection of

any amount (including any interest, fee, charge, or expense incidental to the principal obligation)

unless such amount is expressly authorized by the agreement creating the debt or permitted by

law." 15 U.S.C. § 1692f(1).

37.     Thus, by attempting to obtain payment by informing Plaintiff that he owed

amounts in connection with his prior credit card when such debt had already been paid,

Defendants used unfair and unconscionable means to attempt to collect a purported debt by

attempting to collect payment not expressly authorized by any agreement or permitted by law, in

violation of Section 1692f(1) of the FDCPA.

38.     Defendants have, therefore, violated the general provisions of Sections 1692e and

1692f of the FDCPA, as well as of Sections 1692e(2)(A), 1692e(5), 1692e(10), 1692e(11), and

1692f(1), specifically. As such, Plaintiff Seigle is entitled, at the Court's discretion, to statutory

damages of up to $1,000, as well as attorneys' fees and costs. 15 U.S.C. § 1692k(a).

39.     Defendant's conduct was done intentionally and not as a result of any bona fide

error. On information and belief, Defendants maintain no procedures reasonably adopted to

avoid the error complained of herein, especially given Defendants' intentionally deceptive

indication that each letter constituted Plaintiff's last chance to avoid penalties or interest, as well

as their persistence in contacting Plaintiff about the false amount owed after being specifically

informed about the prior payment.

WHEREFORE, Plaintiff Howard Seigle prays that this Honorable Court award the following relief:

      (a)     Statutory damages;

      (b)     Attorney's fees, litigation expenses, and costs of suit; and

      (c)     Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.


Dated:    January 20, 2012                         Respectfully submitted,

                                                HOWARD SEIGLE


                                                By:  /s/ Daniel J. Marovitch
                                                    Daniel J. Marovitch
                                                    Attorney for Plaintiff


Daniel J. Marovitch (No. 6303897)
MAROVITCH LAW FIRM, LLC
233 S. Wacker Dr., 84th Floor
Chicago, IL 60606
Telephone: (312) 533-1605
Facsimile: (312) 488-4206
*dmarovitch@marovitchlaw.com*